Good afternoon with BCR Carpentry versus FCA US LLC number 24-3202. Mr. Hughes. Good afternoon, Spencer Hughes for plaintiffs appellants. I'd like to reserve three minutes for rebuttal. Granted. May it please the court. FCA imposes a surcharge on every new vehicle sale, which FCA labels as a destination charge. For over 50 years, the term destination charge has been universally understood throughout the automobile industry. It only recoups the automaker's costs of delivering the vehicle to the dealership. But FCA exploits this shared understanding by continuing to use the label destination charge, but marking up that charge to produce a hidden profit. FCA now argues that because it disclosed the amount of the charge as a matter of law, its practice can never mislead a consumer. But that is not the law. The New Jersey Supreme Court has explained that the language employed in labeling a price can mislead consumers into believing that they received a better bargain than they actually did. So let's make sure we're understanding the argument correctly. If the provision on the Monroe label said amount charged dealer for transportation or said Section 1232 F3 disclosure and included the actual average cost plus the profit markup. You wouldn't be making any arguments to us today. Is that right? I think that's right. So the framework, how this works here, we argue, is that the language used to label the price, the court must decide if that language in the context it's used and the context it's received by the consumer has the capacity to mislead. That's the key, the prime ingredient of a New Jersey Consumer Fraud Act claim. So your example, Judge Krause, if the language instead of destination charge was the amount charged, if any, from the manufacturer to the dealer, which is the language from ADA 15 U.S.C. 1232, the court would have to decide if that language had the capacity to mislead the consumer. And I think it probably would not because it would disclose in that moment that the amount here is what FCA charged a dealership. And the allegations and the complaint that we include are about the meaning of the term destination charge and how that term is really understood as a term of art in the automobile industry. Why does that matter when we're looking at what the ordinary consumer would think about here as opposed to what the technical meaning might be in the industry? Exactly right. The inquiry is what a reasonable consumer could understand the term to mean. So why would a reasonable consumer assume that destination charge doesn't include a profit? Where is the reasonable interpretation in that? The allegations in the complaint, paragraphs 111 through 118 run through this at length. We're quoting directly from publications like Kelley Blue Book, J.D. Power, Cars.com. These are trusted publications in the automobile industry that are explaining, they're describing what the understanding of that term, destination charge, is in the industry. A lot of those publications also say that destination charges are non-negotiable. That's right, right?  And so it strikes me that we're kind of in a very weird place because your whole theory of the case, at least as I understand it, is that because the destination charge is misleading, consumers overpaid. But the charge itself, you just say, is non-negotiable. So I'm having a hard time finding that if you mislead about something that's non-negotiable, where the overpayment comes from. So how this works and how this goes, this goes back to the 1950s, right? And I promise I'm answering your question, Judge Phipps, that automakers were moving some portion of the profit that they were making from a vehicle sale from the advertised MSRP into what we now call destination charges. And by doing so, the complaint alleges that the MSRP is the whole ballgame for price competition. That's what consumers are paying attention to. So when a consumer goes to buy a car, he or she may have seen an advertisement that a Ram truck costs $50,000. That's the MSRP. And the consumer may understand, if I can get $2,000 knocked off of that price, I'll have a good deal. And so they negotiate the MSRP down to $48,000. But they're still paying hundreds of dollars in additional profit above that through the destination charge. But your own complaint says the destination charge is non-negotiable. So maybe if they get $2,000 off the MSRP, they've maxed out. And if they've maxed out, then I don't see a basis for saying how they would have paid less. The thing that you say is false, you also say is non-negotiable. And that kind of cuts against meaningful theories of laws. So as a matter of historical fact, when automakers stopped marking up their charges under the phantom freight practice, and this is alleged in the complaint, Chrysler at the time removed $75 from its delivery charge. But the market would only bear an increase of something like $35 in its MSRP. So that establishes that automakers, FCA, could not recapture the same amount of profit that they now make in the destination charge if they had to advertise it in the MSRP. Because that marketplace is intensely competitive. FCA is competing against Ford, GM, Honda, Toyota. And consumers are paying attention to that MSRP price. So because the destination charge is non-negotiable and unscrutinized, it's added on at the end. Consumers aren't paying attention to it because they understand it not to be negotiable and not to produce profit. So again, the point of consequence is just missing to me. If the destination charge includes just the cost, the baseline cost of transportation, it's non-negotiable, the consumer is going to pay it. If it includes cost plus profit, it's non-negotiable, and the consumer is going to pay it. So it strikes me that usually in a fraud theory, you need to show that there's some consequence of the fraud. And your allegations seem to suggest there's no consequence of the fraud, at least based on the alleged fraud, at least based on consumer behavior. I think that misses why consumers pay it without attempting to negotiate it. The reason why they pay a destination charge and there's no negotiation is because of that universal understanding. But your complaint was stronger than that. It didn't say consumers don't try to negotiate it. It was it's understood in the industry to be non-negotiable, as in the dealers don't negotiate that. Maybe they've already paid it, maybe something like this. I don't think you had evidence that said that consumers don't negotiate it as much as you had evidence saying, I'm telling you how the industry works and people don't negotiate this. It's off limits. That's how I understood your allegations. Well, I mean, let me take that first at a bit of a higher level. So we're here on a grant of a motion to dismiss. So we only need plausible allegations in order to move past this bar. And then the district court required us to include definitive allegations of the profit neutral nature of the destination charge, which alone was an analytical error. But I don't think it's fair to say that the inference must be drawn that a consumer doesn't understand specifically that a destination charge can't be negotiated and that it's only the dealership who has that understanding. What the complaint is alleging is that consumers are focusing on MSRPs when they decide which vehicles to buy and FCA is engaging in a practice of shifting some of its profit margin from that advertised price into a destination charge because of this industry-wide understanding that that only recoups a shipping cost, and it can't be negotiable, and it can't be waived. It's just tacked on at the end as a cost-recouping surcharge. And so because of that understanding, FCA is now able to advertise lower prices but still recoup more of its profit because consumers and the industry understand that the destination charge doesn't include profit. I guess if I understand Judge Phipps' question, it goes to a question I share. What's the difference if it's non-negotiable? And since we're talking about New Jersey law here and the New Jersey Consumer Fraud Act, what does that tell us about the requirement of showing actual damages? So here under the New Jersey law, the elements are a practice that is deceptive or unconscionable, an ascertainable loss, and a causal approximate cause connection between them. So one step at a time, if the practice is deceptive because of how FCA is manipulating this industry-wide understanding, then a plaintiff need only show that they have a loss that is caused by that practice. In other words, that they paid more than they otherwise would have paid due to the practice. And the complaint alleges those facts plausibly. That if FCA would have advertised its MSRPs just as its competitors do, including all of its profit margin, and that its destination charge was limited only to its cost of shipping the vehicle to the dealership, it could not have made as much money in each sale. Consumers would have paid less in each sale. Your argument is that they would have had to raise their MSRP? Well, in order to recoup the same amount of money, FCA would have had to raise its MSRP. And by doing so, it would have sold fewer vehicles because some consumers would have made different decisions about which vehicles to purchase. Some consumers would have paid less because the MSRP is understood to be negotiable. They would have negotiated that profit margin down. And as a matter, again, of historical fact, we know that in the past, when the phantom freight was removed from delivery charges, the market would not bear the same amount of increase in the MSRP. So by engaging in this practice, FCA is able to extract more money from every sale and sell more vehicles. I thought part of your argument was that to make this not misleading, what FCA could have done was to just break out the amount that was the average actual cost and the profit component. And if they had done that and said, here is the destination charge and here is an administrative fee, then there wouldn't be anything misleading. Was that your argument? So that goes right back to the language used to describe the price. And this is on the issue of whether the practice is deceptive and has the capacity to mislead consumers. If FCA had, instead of using the industry-wide understood term destination charge, if it had said, this is our vehicle delivery, and I think you used the term administrative fee, we propose a profit charge, could that have the capacity to mislead? It's a very different question. I'm not sure that it does. And if they had disclosed that there was a profit in the charge, then no, they wouldn't have misled consumers about the nature of the charge. And this goes to the unusual nature of the term destination charge. Destination charges have a particular meaning, as the complaint alleges. They mean specifically the cost of delivering a vehicle and no profit. It's interesting because as you begin to talk about this, you begin to drift into the preemption argument that your opposing counsel makes is their lead argument, even though the district court, as I understand, didn't really kind of sink its teeth into that in terms of a basis for its decision. But, you know, we've got this federal statute, and it says you have to disclose the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer. And that same statute says earlier that this has to be on a label, and the label must have true and correct entries. And so it feels very much like the federal Congress and federal law has said this is what we're expecting. And usually when Congress expects something like that, it's a weird time to bring in and say compliance with that also entails state law liability. That's really what, you know, we begin to get into notions of preemption there. And so I don't think anywhere in your complaint do you allege that FCA did not comply with this federal statute. And so they are in compliance with the federal statute, yet you want to impose state law liability. Do you at least understand the tension of the preemption argument that compliance with federal law now opens you up to state law liability? I mean, they might not have wanted to even put the destination charge on the sticker originally if it wasn't for the federal law. They did, and now they've got state law lawsuit against them. Why isn't that obstacle preemption? I understand sort of the intuition that there is a tension there, but this case is not about compliance or noncompliance with the ADA requirement. You concede it's met, right, at least with respect to the amount charged for transportation of the dealership. I mean, we don't know the facts of what FCA charged the dealership, but we have no reason to believe it's not met. Yeah, so it's not part of your complaint. The falsity of compliance with the federal law is not part of your complaint. That's correct. But there's two different analytical issues here, which the preemption inquiry points out. The idea that compliance with that portion of ADA exempts FCA from state law liability would require a finding that ADA preempts state consumer protection law. No court has ever made that finding. There's a heavy presumption against finding preemption at all, especially in the consumer protection context. And the idea we've pointed out in our reply brief that automakers have complied both with consumer protection law and ADA for over 50 years. And the way that they do so is they don't use a misleading label, a label that has the capacity to mislead consumers, and FCA could use a different label if it chose that ADA does not require the term destination charge. Let me give you a hypothetical about something different that's on the label. Another thing on the label is you have to put safety ratings, like usually one to five stars on it. And so one of them is for rollover ratings. And so let's just say that Dodge Durango, the NHTSA, said, you know what, we're going to tell you. We're going to issue an order, a rule. Give it five stars. We had messed up data. Just give them the benefit of the doubt, five stars. But the industry knew that Dodge Durango was really about a three star on its rollover rating. The label goes out. They follow what the NHTSA says. They give it five stars. They're in compliance with that. But everyone knows that's not true. The industry knows. Everyone knows it's a three star rollover rating. Do you have a claim for capacity mislead under the NJ, under New Jersey's consumer fraud statute? Because you followed federal law, same provision, but everyone knows it's not true. The whole industry knows that's not true. Your competitors can buy it. Consumer Reports can buy it. Kelly Blue Book can buy it. I think it rolls over a little more than what we'd expect out of a five star vehicle. Do you think you'd have one or do you think that even though that I guess the statute's never been preempted, so that wouldn't even be occasion to preempt? No, I don't think we'd have a claim in that case because of the star rating for safety is not, it's distinct from what we're talking about here. The term destination charge is not required by ADA. And automakers can use different terms to describe their vehicle delivery charges. So if instead of destination charge, FCA said, quote, the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it's delivered to the dealer, then you'd sit there and say, well, look, yeah, no claim. Our claim is in the choice of words. Our claim is in the use of the phrase destination charge instead of statutory text. I think that's exactly right because the analysis has to be about the language employed on the label. And if that language has the capacity to mislead a consumer in the context it's used. The complaint alleges that the language destination charge conveys a meaning. It has a meaning that consumers understand. And that meaning for that specific two-word term is the cost of delivering the vehicle and no profit. And the complaint alleges that repeatedly. It's interesting in a fraud case to derive meaning from industry standard. You normally see the fraudster being the one that's fooling around with meaning and language and deception. Here it's industry standard, not, you know, everyone in the industry calls it destination charge. FCA called it destination charge and they used it. And everyone in the industry knows that destination charge is part of the labeling requirement. So, you know, at one level it is in conformity with industry. Well, I think that so there's a number of cases in similar context that have actually addressed that exact question. And Barry is a good example where the term dealer invoice could have misled a consumer, even though the defendant in that case didn't make an affirmative statement about what dealer invoice means. Another good case is Latman, which is a Florida appellate case, where a cruise line added port charges to its tickets. And it didn't, the court didn't require the cruise line to explain, hey, a port charge is recouping costs. No, in all these cases, McHale, Cooks, those are other cases we cite, a defendant takes advantage of an industry understanding of a term and manipulates that understanding for its own benefit. So while consumers in the industry will look at the language and understand that term to convey a particular meaning, the defendant then manipulates it. And again, I just want to point out that, you know, our allegations here are that consumers understand destination charges in this way. And we only have to realize that plausibly. We don't have to prove it here. We're only just, we're at the pleading stage. Can I just, this is a very technical question. And it's probably my last question, too. But, you know, in order for there to be appellate jurisdiction, you know, there has to be a final order. And this is consolidated cases, so everything begins to get a little, you know, jumbled, let's say. But you've got, I think, Lindsay and BCR are part of one of the two consolidated cases, Plaintiff Lindsay and Plaintiff BCR. But Lindsay didn't join any of the consolidated or later complaints. Didn't he just kind of hang out, you know, stay with his original complaint? And if so, isn't that original complaint still kind of live in a sense that that case does not have a final order? There was an adjudication of BCR's amended or twice amended complaint. But Lindsay's still working with the original complaint. And I haven't seen, and maybe you know, maybe you could just point me to it in the docket, where the Lindsay issue has been resolved. And if the Lindsay issue hasn't been resolved, then maybe there isn't finality, at least with respect to one of the two appellate cases. Do you know, just, I'm sorry, I don't mean to quiz you on docket minutiae. But do you know if there has been a disposition of Lindsay's original complaint? Or is that still live? I don't know as I stand here, Judge Bibbs. I'm not sure about that. I asked it before rebuttal, just in case you wanted to, just in case you had the docket available. I'll see if I can find out the answer or submit something later. I see my time has expired and the court has no further questions. I'll be back for rebuttal. I have one for you. And that is, we have, as you may know, another case pending, also alleging a nationwide class action on this same issue coming up from the District of Delaware. Does that case control the disposition of this case? Or are they so different in the state laws in question that the outcome in one would not affect the outcome in the other? I don't think that they control in each case. I do think that the laws are sufficiently similar that they can be decided together. It is true that in the other case out of the District of Delaware, there are allegations under 11 different state laws. And the briefing in that case, which is not this case, but we pointed out that at least under four of those state laws, issues very, very similar to this have already been decided by courts in those states. One of them is the Latman case that I just mentioned from Florida, where there is published Florida appellate authority analyzing this under Florida's consumer protection law. So, I mean, I think that the state laws are sufficiently similar. I mean, the allegations and the complaints are virtually identical. That's usually for the last case. So they can be decided together. But if the court believes there is a difference in those laws, in particular because of the authority that exists already in Florida, Missouri, and Illinois, for example, they may not necessarily be decided together. Thank you. Henry Biddle. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Stephen Dunlap. I represent FCA US LLC in this matter. As the Court knows, every other court that has looked at whether or not the allegations in this case state a viable claim has come to the same conclusion, and that conclusion is that these allegations do not. We have the Beeney v. FCA US case, which Your Honor was just mentioning. That's where Judge Hughes from the Federal Circuit, sitting in a district court, sitting as a district court judge in Delaware, dismissed a complaint and then denied leave to amend, adding the same allegations that were added to the second amended complaint here, finding it would be futile to allow amendment. We have the Gunn v. FCA US case, which we cited to the Court, and that's where a judge in the Northern District of California dismissed an original complaint, did grant leave to amend, much like the district court judge here. And since our briefing, Judge Donato has now issued an order, again dismissing the claims, which are again virtually identical to the allegations at issue here in a second amended complaint there, which just mimicked what we have here. So here we're dealing with New Jersey law, and under New Jersey law, you don't need a false statement. You need just the capacity to mislead, right? That is correct, Your Honor. So if we had here what was on the Monroney label for purposes of the AIDA disclosure, if it said transportation costs excluding profit, and FCA put down the same figure that it currently puts down, do you agree that that would be misleading? If there is some affirmative representation that there was something in that charge and you put something else, I agree. I mean, or something was excluded from that charge. I understand you to be saying, if we put here's our destination charge in consumer, it does not include profit, but the company included profit? Well, let's take the term destination charge out of it. If it's, these are the transportation costs that are charged to the dealer without any profit added, and they put down the figures that they currently have down, that would be misleading. And if it included profit? As it currently does, or it's alleged to, correct? If you tell a consumer it does not include profit and it does, that would be an affirmative misrepresentation, Your Honor. So, I take the argument of your colleague to be that AIDA doesn't say that this is, whatever the disclosure is that's required under F3, is to be called destination charge. AIDA has a disclosure about amount charged to a dealer for transportation, and there's, they don't allege that there's any failure to comply with that. It sounds like the allegation is that the term destination charge is one that reasonable auto consumers understand to mean the transportation charge without profit. And if that is so, then again, based on the last hypo, putting down destination charge, if a reasonable consumer understood it to mean the transportation costs excluding profit, then it would be misleading, right? But that is not so, Your Honor, because every court that has considered this has found that the term destination charge is not misleading, even if it includes profit. Let's get to that and the allegations, but if that was the understanding of the reasonable consumer, and what is listed on the disclosure for AIDA purposes, instead includes profit, then what's listed there, I'm sorry, if what's put down as the delivery or destination charge is including profit, then it would be misleading, right? I want to make sure I understand, Your Honor, because I want to make sure that the record here is clear. Is your question that if everyone understood that destination charge meant only transportation costs, then it would be misleading to then include profit in that? Correct. I think all courts have universally said no, and we would push back on that for several reasons. Sorry, are you saying that all courts have said that if a reasonable consumer understood destination charge to exclude profit, that including profit would not be misleading? All courts have, all courts that have looked at the term destination charge have found that it's not reasonable for consumers to assume that it does not have profit. I know I used a double negative there. Real fast, I'm sorry, but you cite all courts, all courts, all courts. None of those were under New Jersey law, right? New Jersey has a super, were they? Romoff in the Ninth Circuit even. That was New Jersey law? Yes. That was under New Jersey law. Romoff both in the District Court and the Ninth Circuit was under New Jersey law. Did it construe the phrase capacity to mislead in New Jersey law? Because that strikes me as capacious in terms of, you know, the fraud that it brings in. The Romoff in the Ninth Circuit, of course. Oh, the phrase, did it, go ahead. It says we hold that a reasonable or average consumer would not be deceived by the destination charge underlying each plaintiff's claim. So I think you're asking about the capacity to deceive. So actual deception and capacity usually refers to potentiality. And so I'm just wondering, like, New Jersey, capacity to deceive strikes me as a very bold, bold, bold consumer fraud statute. And so I just, I wasn't aware that there was a capacity to mislead holding by another court. Yes, and I do, I'm trying to think of all the statements of the law. And I think our district court here, the finding was that the term charge does not imply an absent of profit. I think that the gun case came to the same conclusion, but that may have been on the original motion to dismiss. But all courts have, that have considered the issue, have found that the term destination charge does not imply or does not suggest an absence of profit. And Mr. Dumoff, in the Romoff case and the other ones that you're referring to, they made far more conclusory allegations about what reasonable consumers would understand. In which ones, Your Honor? In Romoff. In Romoff. You're right, Your Honor. Romoff was an earlier version of the complaint at issue here. But the gun and the beanie complaints were, well, the gun complaint was virtually identical to here. And then the beanie, the amendment they wanted to file but they were denied leave to file, was virtually identical to here. Those are under other state law. None of those, you're right, Your Honor, had New Jersey law. But plaintiff's argument, you know, that they're similar and they were under similar laws that, you know, had similar standards in terms of consumer expectations. If the key issue here, as we're reviewing the propriety of dismissal at the pleading stage, is whether it's plausible that a reasonable consumer would understand the term destination charge to exclude profit. We have here in the Second Amendment complaint a number of particular allegations and sources that have been referenced and incorporated into the complaint. And the Kelly Blue Book that talks about the destination charges calculated based on the equalized delivery. You factor the cost of shipping vehicles and equalize the cost. The Honda spokesperson, that destination charge consists of all transportation and processing costs for vehicles covering their movement from plants or ports to dealers. Costs are calculated into a national average. It's the same for all dealers. A Chrysler representative that says the automaker sets the destination charge based on costs to deliver a vehicle from the assembly plant to the dealership. An analyst discussing the increase in destination charges in recent years saying the increase isn't a way manufacturers try to pad prices upward. It reflects increased costs in logistics due to higher fuel costs. Consumer reports, the destination charge covers costs to deliver a vehicle from the factory to the dealership. You get the idea. What else at the pleading stage would you expect a plaintiff to do to plausibly allege a reasonable consumer's understanding that destination charge consists of the transportation costs? Two answers to that question, Your Honor. And I think I want to go through it sort of the same way the district court judge went through it. And also in relation to what they've argued and alleged here. So plaintiffs start from the notion that there is some industry understanding that the term destination charge does not include profit. And what they do in their Second Amendment complaint is they cite many of the articles that Your Honor just cited. And so obviously the district court judges that have looked at the Second Amendment complaint have all grappled with that. And even the district court judge below in this case grappled with that. And this is where plaintiffs say she applied some improper definitive standard as opposed to a plausibility standard. But if you look at her order where she was using the definitive language was actually in characterizing these random and in many times contradictory articles that plaintiffs cite in their Second Amendment complaint. What she said there was that these were not statements of FCA U.S. And secondly, they do not demonstrate that these charges or costs were definitively profit neutral. And so she wasn't requiring some heightened definitive pleading standard. She was commenting on the vague and contradictory website articles. Because when we look at those articles, they say all kinds of different things. Well, each of these articles says the destination charge is the cost of transportation. And and some of them, like the quote from the from J.D. Power, Vice President, is that destination charges are intentionally profit neutral. They aren't supposed to hide profits in the field. It's the average across its portfolio to ship vehicles to parts all parts of the country. Well, so, again, if if. A plaintiff were to seeking to plausibly allege a reasonable consumer's understanding. The destination charge did excluded the term profit. What else would you expect them to put into a complaint besides statements like that from sources that tend to inform consumers like the Kelly Blue Book and J.D. Power and Chrysler Reps and Consumer Reports? I've got two answers to that, Your Honor. First, I do want to point out that the auto approved website that they cite in footnote 32 of their Second Amendment complaint says, and I quote, Many feel the added fees only serve to increase the overall sticker price and increase the profits of manufacturers. So that's when I talk about the vague and contradictory nature of what they're relying on. That's just one example. I don't want to cut you off before you get your second point. So so if you don't get to it, I'll I'll ask you to get back to your second point. But, you know, at one level, if if there's confusion in the industry, isn't that really just what discovery is about? If we agree that industry understanding works, I'm not sure that's right. But if we say this is what the industry understanding is, they allege something. It looks like there's there is there's counter issues in the industry. In contract law, sometimes you have to have discovery as to what a trade usage term means or what the customer practice is of a certain industry. Is this the sort of thing that goes to discovery to determine not just, you know, it wouldn't be just six isolated incidents or whatever it is. Honda, you know, it's weird that competitors can can jam their competitors by saying this is what we understand it to mean. They're fraudulent. That's a little unusual. But this is going to take this ago to my second point, because this is why it doesn't reach a plausibility standard is what the district court here said. And I think if you read the whole record, it doesn't reach a plausibility standard even on on a review. Because one thing plaintiffs do on page 10 of their brief, they cite a chart, a graph that is supposed to depict the state of the destination charges in the industry. And they use that to then argue that FCUS is some sort of outlier for including profit in the destination charge. But what we know about that chart, your honors, is GM itself has been accused for having profit in its destination charge from the roll off case. Their destination chargers are more than Ford's. We know that Honda, the example you just gave, your honor, is accused of having destination charges in its or excuse me, profits in its destination charge. And I have a cite for your honors because this was new and not included in our brief. But it's a 223 Westlaw 4525374 where Honda's accused of having profits in its destination charge. And if you look at plaintiff's own chart, it's among the lowest of all the destination charges. So this isn't something where FCUS is some unique outlier and there's some general industry understanding. And we're just trying to profit off that understanding. The articles that they cite show that there can be profit in destination charges. All of the OEMs that they cite in their chart have been accused of having profits in their destination charge. So the idea that there is some industry norm that destination charge means profit neutral just simply isn't plausible. And that's when the district court. They've included numerous allegations and sources in the complaint. There may be arguments on the other side, but where they've alleged a number of sources that do describe the term destination charge that way. Why doesn't it meet the plausibility threshold? Because it's contradictory, your honor. I mean, if you have something that might be plausible and might not be plausible, that doesn't get you over the plausibility threshold. I mean, isn't that what they were dealing with in cases like Bosland and Berry? And where the New Jersey Supreme Court looked at terms that were broad enough to be ambiguous and concluded that it was misleading to consumers because there were additional costs that were packed into them that consumers wouldn't realize were included. Berry doesn't speak to our situation, your honor, because that dealt with a very specific statute that you weren't allowed to use certain words. Here, FCA is obviously doing what it's required to do by federal law. We do have the preemption analysis in our briefing. And I just want to make one point about what plaintiffs say. And I think we all agree that Farina's got the standard here and sets forth the law. What plaintiffs say is you could have just used a different amount or called it something else. That would be like the plaintiff in Farina saying that you don't get preemption because you could have just made a cell phone with less radiation. That doesn't get you around the preemption analysis to just say you should have just changed something. What we're dealing with is FCA U.S. complied with a federal statute, disclosed exactly what Congress said it could disclose, which was the amount that it charged to the dealers. That's the exact amount that was charged and put that on the Monroney label like it was required to. And now that's what plaintiffs are using to accuse FCA U.S. of violating state law. That's not I'm sorry, but I'm not understanding that to be their argument. There's no allegation that they violated AIDA. Right there. Their claim, as I take it, is that the disclosure of the transportation costs are charged to the dealer is is fine. That's what is required to be listed and is listed. But when FCA puts out what they term a destination charge, that communicates something different. And that's the term destination charge is understood by reasonable consumers to be limited to the at the average cost, not including profit. Right. That is what I understand their argument to be, Your Honor. But what they are saying in the context of that is that you have violated state law by doing what you're required to do under federal law. We are required to state the amount that we charge our dealers for the destination, and that's what we've done. And they're now saying that that is the basis for a state law claim. So can I go back to a question that Judge Meade asked your opponent on the other side originally, which is why does industry standard matter? The phrase is destination charge. It's not destination cost. It's not destination cost plus profit. Why do we care what the industry standard says if if what's on the sticker is destination charge? And maybe the reasonable consumer just knows, sees that that's a charge, not a cost. Not every consumer reads Consumer Reports or Kelley Blue Book. In fact, some of the plaintiffs in this case paid a lot for the cars. I think they could have paid a lot less if they would have read Kelley Blue Book or Consumer Reports or something like that, because they tell you kind of how to how to how to pick your fight. So I've heard what what your friend on the other side says, but I thought Judge Meade's question applied to both. I want to know what you think. Why does industry standard matter? I don't think it matters, Your Honor. I've been responding to to the questions and to the arguments. No, no, I'm not saying I'm not saying you should have responded to his question. No, no, no. I don't mean to single that out. But no, I go back to every court that's looked at the term destination charge, even under the beefed up allegations, how plaintiffs like to characterize them here, has come back and found the same thing. It's just not this. It doesn't have the capacity to deceive it. And to your point earlier about the no injury, we certainly make arguments about that in our briefing. I don't want to take up too much time, but it probably deserves some discussion. I mean, I think Judge Hughes's analysis and Beany in his order is right. under New Jersey law and Tiedemann and what the Supreme Court has said is in terms of ascertainable loss. And it can't be based on speculation because not a single plaintiff here alleges with any facts that they even tried to get a different transaction or that that if they had tried that they would have been able to get a different transaction. And I think that's very important to the analysis as well. But that that's that is that showing is not required under New Jersey's Consumer Protection Consumer Fraud Act. Oh, you do have to. My understanding, Your Honor, is you do have to plead facts showing that you suffered a loss. You have to. You don't have to. I thought Boslin says the CFA does not demand a plaintiff necessarily point to an actually suffered loss or an incurred loss, but only to one that is ascertainable. Quoting from Thiedemann, Your Honor v. Mercedes Benz, Supreme Court of New Jersey in 2005, a plaintiff must demonstrate a loss is quantifiable or measurable and not merely hypothetical or speculative. Right. But here, the concrete figure would presumably be the difference between the transportation costs averaged out nationally versus that cost plus profit. Right. Just that it's the it's the profit differential that would be the concrete ascertainable figure. I think, Your Honor, on the at least on the name plaintiffs facts that they affirmatively plead here, you couldn't make that leap to Judge Phipps point. We have named plaintiffs who paid over sticker price for their vehicles, meaning the MSRP plus options plus destination charge equals total. The four components required by the AIDA on the Moroni label. We have plaintiffs that paid over the total figure. So you couldn't make that inference that had there been some other disclosures, they might have played something less because they were willing to pay more than the total figure already with them claiming that they didn't know one way or another about the destination charge. Questions? Thank you, Your Honors. Thank you. I think my friend on the other side pointed out touched on a very important topic of the pleading standard and plausibility. And one of the things that he mentioned was if something might be plausible, it might not be plausible. He suggested that's not enough at the pleading stage. That's not the case. That goes back to Iqbal. It's possible for multiple things to be plausible at the same time. It can be plausible based on the allegations of the complaint that a consumer would understand a reasonable consumer in New Jersey would understand the destination charge doesn't include profit. It could be plausible now to think maybe that's not the case. It's a fairly generous definition of plausibility. I don't think that's what Iqbal has in mind though, right? I mean, I hear you. We might find some consumer somewhere. But I'm still lost with how blank charge would reasonably be understood to only mean the costs necessary to accomplish the production of that good or service. If it says milk charge $4, I don't think there's a bunch of farmers that are putting together this product and earning nothing on the transaction. I assume costs ordinarily includes can include profit. Maybe they don't. Particularly if they disclaim it, then I understand. I'm still trying to understand how an ordinary reasonable understanding of that word would reasonably include the idea that, no, there's never any profits built into that. I think your question is, you're exactly right, that a milk charge from a farmer at a grocery store, it probably wouldn't convey to a reasonable consumer that there's no profit involved. That points out here the allegations in the complaint of how, frankly, unique the term destination charge is. This is a special kind of charge. And it exists after Congress passed the ADA in 1958 when automakers were marking up their delivery charges. So they passed this law. They convinced them to end this phantom freight practice. And then for more than 50 years, automakers engaged in this uniform conduct of imposing a destination charge that only recouped their costs. So the destination charge in the automobile industry is special. It's different. And Judge Maney, importantly, it's different from the word charge. And that's a key fact because we talked about Romoff, which is a decision out of California involving General Motors. And the complaint in Romoff was threadbare. It was very thin. And the district court there did the best it could. But what it did was it went to the dictionary to look up the word charge. And it decided that based on the dictionary definition of that one word, a consumer would not expect a destination charge not to include profit. But here it's important. The allegations in the complaint are about this two-word term and how it is used in this specific industry. What we know about this two-word term in this industry, though, is it is used almost uniformly to meet the federal obligations. And so since it's used to meet federal obligations, shouldn't it be understood in context of exactly what those federal obligations are? And those federal obligations say nothing about profit or a breakdown between cost and profit. But those federal obligations also don't include any language about what an automaker needs to use to label that charge. But industry standard has filled that in for us. That's exactly what FCA is manipulating to its own benefit. It's piggybacking on that understanding, which grew out of this 50, 60-year history of using destination charge to refer to that amount that was charged for vehicle delivery. And so the idea that complying with ADA by disclosing on the sticker the amount charged to the dealer insulates, as a matter of law, a manufacturer from misleading through the label it uses on that sticker, it opens some dangerous doors. For example, a manufacturer could label its charge as a sales tax. And so long if that is the amount that it charged the dealer, then it would be insulated from liability if that were true. That's not true. And Barry explains why that's the case. The language employed to label the charge is what the court must analyze under the New Jersey Consumer Fraud Act and decide if it has the capacity to mislead. I guess my point is if that language, if we look to industry standard, and the industry standard is that's what the industry uses to meet the federal obligation, then it feels that everyone knows what that means. If the phrase sales tax is what the industry, oddly, everyone understood to mean you meet the F3 obligation, then maybe that wouldn't be as misleading as you say. And the only reason it would be misleading is because we'd actually look at the text of those two words. But the text of two words in this instance cut against you because of destination charge, not destination cost. So it feels that, you know, there's kind of this vacillation between industry standard and the text of two words. You know, and maybe I get it. Maybe the answer is what you came back to first, which is that both can be plausible. But if both can't be plausible, it's kind of tough. I think your question, if I understand it correctly, was getting at that point. Is it plausible for a consumer to see the Monroney sticker and understand that that charge is what 15 U.S.C. section 1232 F3 requires? I mean, I suppose it's plausible. We understand consumers don't really understand the technical meanings of terms that way. But could it also be plausible based on our allegations, which must be accepted as true, that a reasonable consumer would understand the term destination charge in the way that Kelly Blue Book and J.D. Power and uniformly across the industry these sources are explaining what it means and has meant for more than 50 years? And that's a low bar at this stage, that it's plausible, that that is how a reasonable consumer could understand that term. And if the complaint alleges sufficient facts when accepted as true to make that conclusion plausible, then this court must reverse and allow the complaint to continue because it pleads viable claims. I see my time has expired. I'm happy to answer any further questions. Do you have anything else on the appellate jurisdiction point? Unfortunately, I don't. But I will submit a supplemental filing to the court to address your question, Judge Phipps. If I could just explore for a second Judge Phipps' last question. In essence, are you saying that what's permissible under AIDA is, in terms of the listing on a sticker, is broader than the actual charge averaged across the nation? But that around the term destination charge, there is grown a particular understanding of something narrower associated with that amount, that that is actual cost, not including profit. So while AIDA would permit something beyond just cost to be listed, the term destination charge has come to mean cost only. I think that that is right. So the statute, I thought it was that it could mean that, that it's come to mean something different. That the statute permits the broader, but it's possible the custom and practice has now included the lesser. And so because there's a debate, that makes it a reasonable question of fact that has to be adjudicated at a later stage. I think that's right. So what my answer was, we allege facts that, the way Judge Krause formulated, that it's correct. But at this point, we only need to allege that it's plausible that that be correct. In other words, that the statute requires a display of the amount charged to the dealer. But the statute has no requirement for what language is used for that display. And the term destination charge has become imbued with this particular meaning. In the same way that if you go to a restaurant and order a pizza pie, and someone comes out and brings you a graham cracker crust with blueberry filling, we wouldn't ask somebody to open the dictionary and look up the word pie to see if you got what you expected. Because that two-word term conveys its own meaning. Destination charge is the same way. Which I think has to rest on the assumption that in the automotive industry, the reasonable consumer believes that there are portions of the transaction that are, in fact, not profit motivated. That's a hard argument to make, right? If we're talking about custom and practice, we're getting into industry standards. There could be an argument that the reasonable consumer of ordinary intelligence knows all of this is profit driven, right? None of this is a pass-through or a, hey, we just want to help you out today here, consumer, right? I think that's plausible, too. And that goes right back to your point earlier about the milk charge, right? And I think this is a key point. I don't think that a decision, in this case reversing, would really necessarily bear on any other charge in the world that you can think of. Because the term destination charge has the specific meaning in this specific context, which the complaint alleges. So here, because the court has to accept those allegations as true and then decide if they are true, whether it's plausible a reasonable consumer would understand the term to mean what the industry sources say, then in that context, the destination charge has a specific term. My friend on the other side, by the way, just to address it briefly, he mentioned the chart on page 10 of our opening brief, which comes from paragraph 98 of our complaint and mentioned other automakers facing similar lawsuits. I have nothing to say about the other automakers. I would just encourage the court to look at that chart and see the FCA's destination charge in 2011 was the lowest in the industry. And in 2020, the end of the chart, it's $500 higher than some of its competitors. And that there is evidence of FCA, you know, manipulating this consumer understanding of the term for its own benefit to produce this profit. And that's evidence of FCA's ability to extract additional money from this, which is the ascertainable loss that consumers are suffering in New Jersey when they purchase FCA vehicles. Normally in a consumer deception case like this, you put forward consumer surveys showing the consumer's understanding. There's nothing like that in this complaint. Does that make it insufficient? No, it doesn't. I think it's possible that at some point later, you know, if this court reverses and the case continues into discovery, I'm sure FCA will contest whether this term, destination charge, has this meaning to consumers. And at that point, evidence such as consumer studies will probably be produced by both sides. But right now, the question is whether it's plausible that a universal understanding of cars.com, Kelly Blue Book, J.D. Power, trusted sources, not one-off blog posts, but the sources that are understood in the industry to know what they're talking about, are telling consumers destination charges do not include profit. Is it plausible that a reasonable consumer would also have that understanding? That's the question. It doesn't have to be likely. It certainly doesn't have to be certain. It just has to be plausible. And that's one of the issues with the district court's decision in finding the complaint failed to allege that the charges were definitively profit neutral. That's the wrong standard. The facts in the complaint, when accepted as true, show it's plausible that a consumer could understand that this charge does not include profit. And if the court makes that finding, then it must reverse and allow the complaint to continue with viable claims. Thank you. Thank you. We will take the case under advisement.